IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| IN RE: | : | |
| | : | |
| TRIBUNE MEDIA COMPANY, et al., | : | Bankruptcy Case No. 08-13141 (BLS) |
| | : | |
| Debtors. | : | |
| | : | |
| ROBERT HENKE, | : | |
| | : | |
| Appellant, | : | |
| | : | |
| v. | : | Civil Action No. 20-383-RGA |
| | : | |
| TRIBUNE MEDIA COMPANY, | : | |
| | : | |
| Appellees. | : | |

MEMORANDUM

Before me is Robert Henke's appeal from a decision of the bankruptcy court denying his claims in a chapter 11 bankruptcy proceeding of the Tribune Media Company and its affiliated company, the Baltimore Sun. The claims are based on allegations that the Sun, a newspaper, defamed him in an article it published on October 7, 2007. (D.I. 22 at JA00096-JA00106). There are also claims that the Sun had made various misrepresentations to him.

The bankruptcy court held an evidentiary hearing, after which it wrote a lengthy opinion explaining why it was sustaining the Sun's objections to the claims. On appeal, Henke, proceeding *pro se* as he has done throughout the bankruptcy court proceedings, does not argue that the bankruptcy court committed any error of law in its analysis. Further, while he disputes various factual statements made in the court's opinion, he does not argue that the decision should

be reversed because of any clearly erroneous factual findings. Rather, the issue he raises on appeal is a claim that the court denied him due process in its procedures for resolving the claims.

I have jurisdiction over the appeal because sustaining the Sun's objections to the claims was a final order, and Henke timely filed an appeal.

Since the appeal concerns the process, I now describe what I think is the relevant procedural history.

Henke timely filed claims in the bankruptcy against the Sun in 2009, one of which he amended in 2012. *In re Tribune Media Co.*, 616 B.R. 475, 479 nn. 4 &5 (Bankr. D. Del. 2020). The Sun objected. *Id*. at 479 n.6. The bankruptcy court held a hearing in 2012. *Id.* at 479. In 2016, it denied the claims. *In re Tribune Media Co.*, 552 B.R. 282 (Bankr. D. Del. 2016). Henke appealed. I vacated the decision on the basis that the court denied the claims for lack of proof, but there had been no notice that the hearing was to be an evidentiary hearing. *Henke v. Tribune Media Co.*, 2019 WL 643734, at *4-6 (D. Del. Feb. 15, 2019).

On remand, the bankruptcy court had multiple pre-hearing conferences with the parties. The Court held telephonic conferences on April 16, 2019 (Bkr. No. 08-13141, D.I. 14519),[1] May 23, 2019 (D.I. 23 at JA00970-JA1001), June 17, 2019 (Bkr. No. 08-13141, D.I. 14548 (sign-in sheet)), and June 27, 2019 (D.I. 23 at JA01002-JA01027).

At the April 16th conference, the parties discussed the schedule including the length of a discovery period; Judge Carey denied Henke's request for six months of preparation. (D.I. 24 at 30-31; D.I. 31 at 6-7). The parties on May 2nd submitted a stipulation as to a discovery schedule

---

[1] Citations to Bkr. No. 08-13141 refer to the docket in the Bankruptcy Court. Of the four telephonic conferences, only two have been transcribed.

with a hearing date of June 20, 2019.  (Bkr. No. 08-13141, D.I. 14523; *see also* D.I. 23 at JA00978-JA00979).

Until May 13, 2019, the case had been handled by Judge Carey, but, due to his imminent retirement, the case was then reassigned to Judge Shannon.  *Tribune*, 616 B.R. at 480 n.9 (*see* D.I. 23 at JA00973-JA00974).

On May 14th, Henke sought to extend the stipulated discovery deadlines and postpone the hearing.  (Bkr. No. 08-13431, D.I. 14526 at 2, 6).  Henke had timely propounded discovery. (D.I. 23 at JA00982).  The request to postpone the June 20th hearing date was denied during the May 23rd conference.  (D.I. 23 at JA00984-JA00985).  The bankruptcy court stated it would have another conference on June 17th wherein the schedule could be reconsidered if there was basis for doing so.  (D.I. 23 at JA00986-JA00989).  The bankruptcy court explained to Henke what would be expected at the hearing—he should "bring any documents" and "other witnesses" and he could ask questions of the Sun's witnesses.  (D.I. 23 at JA00991, JA00999-JA01000; *see also* JA01012-JA01013).  The bankruptcy court stated that Henke could submit a pre-hearing brief "if [he] want[ed] to do that."  (D.I. 23 at JA00993).  The bankruptcy court indicated that it had all day available for the hearing.  (D.I. 23 at JA00994-JA00995).

The June 17th conference is not transcribed and there does not appear to be an audio recording of it on the docket.  At that conference, or sometime near that conference, it appears the hearing was rescheduled from June 20th to July 2nd.

At the June 27th conference, Henke advised that he had no witnesses.  (D.I. 23 at JA01012).  The bankruptcy court made clear that despite the flurry of last-minute activity, it would entertain a request for a continuance based on not having "a fair opportunity to prepare." (D.I. 23 at JA01015).  No such request was made by either side.  The bankruptcy court did,

however, grant Henke more time, upon his request, on an issue that would not impact the hearing date. (D.I. 23 at JA01019-JA01020).

At the hearing, on July 2, 2019, the Sun called one witness, Gadi Dechter, the journalist who wrote the 2007 article. (D.I. 23 at JA01059). Henke declined to cross-examine him. (*Id*. at JA01122). Henke did not call any witnesses. Henke submitted a substantial amount of documentary evidence, which the bankruptcy court admitted into evidence. The court held closing argument on August 5, 2019. (D.I. 23 at JA01235).

The bankruptcy court issued a lengthy opinion on March 3, 2020, in which it sustained the objections to the claims. *Tribune*, 616 B.R. 475. Henke filed a notice of appeal dated March 11, 2020, docketed on March 16, 2021. (D.I. 1).

The parties have fully briefed the appeal. (D.I. 24, 31, 35).[2] I do not think oral argument would assist in the resolution of the issues on appeal, and therefore I have not had oral argument.

The essence of due process is notice and an opportunity to be heard. Henke's due process arguments on this appeal are of a different nature than the due process argument raised in his prior appeal. There he claimed lack of notice. He does not now claim lack of notice and he does not claim that he did not have an evidentiary hearing. Instead, he claims a denial of due process for myriad reasons: (1) Judge Shannon was biased; (2) he ran out of financial resources while prosecuting his claim; (3) Judge Shannon did not review his evidence; (4) the evidentiary

---

[2] Henke's opening brief was originally due August 16, 2020. Three times at Henke's request (D.I. 10, 12, 14), the due date was continued. More or less simultaneously with the third request, Henke filed an opening brief. There was then a joint request for a continuance, which included permitting Henke to file a revised version of his opening brief. (D.I. 17). Henke thereafter filed the revised version of his opening brief. (D.I. 24). I then granted the Sun's request for a continuance. (D.I. 28). Shortly thereafter, Henke requested a "fourth continuance" so that he could file a "complete" opening brief. (D.I. 29). I denied that motion. (D.I. 30).

hearing was defective; and (5) there was deceit during the evidentiary hearing. (D.I. 35 at 4 ("Statement of issues")).[3]

I review his claims of denial of procedural due process *de novo*. *Anthony v. Interform Corp.*, 96 F.3d 692, 693-94 (3d Cir. 1996).

I do not think there is any merit to any of the due process issues. Before I briefly explain why, though, it is necessary to explain how the current procedural posture impacts Henke's arguments. An appeal is not a "do-over." Thus, Judge Shannon's adjudging the only live witness—the author of the article—at the hearing to be credible and sincere was his decision to make. Henke's decisions not to cross-examine the journalist, and not to call any witnesses himself, were judgment calls; they cannot be undone. Henke's briefs contain numerous statements about what he recalls about his interactions with the journalist, his state of mind, and related speculation that are unsupported by any citations to the record. (*E.g.*, D.I. 24 at 40, 45, 50, 52, 53, 55; D.I. 35 at 17, 18, 19, 20, 23, 25, 28, 33, 36, 37, 39). And they do not sound like anything I would find in the evidentiary record even if I scoured the record looking for them. Further, even on the core due process issues raised, for the most part I do not see that they have been preserved.

The criticism of Judge Shannon as being biased appears to be based on the following assertions. One, Judge Shannon "plagiarized" Judge Carey's opinion. Two, Judge Shannon and Judge Carey worked together and might have been close friends. Three, Judge Shannon should not have found the journalist credible.[4]

---

[3] Henke's summary of his arguments is more clearly set forth in the reply brief than in his opening brief, which is why I cite it.

[4] Henke raises issues (D.I. 24 at 28-29; D.I. 35 at 7-8; *see* Bkr. No. 08-13141, D.I. 14526) about Judge Carey that were not raised in the first appeal and that have no colorable basis. Judge Shannon denied the related motion to recuse as moot. (D.I. 23 at JA00974). In any event, since this is an appeal from a decision of Judge Shannon, I

First, I do not see any evidence that Judge Shannon "plagiarized" Judge Carey. The fact that the opinions have similarities should not be surprising. Among other things, when I vacated Judge Carey's decision, I offered no opinion on his defamation and misrepresentation analysis. The Sun, not surprisingly, referred Judge Shannon to Judge Carey's opinion. (*See, e.g.*, D.I. 23 at JA01039, JA01046-JA01047, JA01124, JA01128 ("Judge Carey's analysis was spot on."), JA01144, JA01161). There was no reason Judge Shannon could not read and consider Judge Carey's analysis. Indeed, he referred to reading Judge Carey's opinion while asking questions of the Sun's lawyers and implied as much while asking Henke questions. (D.I. 23 at JA01041, JA01057). To the extent he agreed with Judge Carey's analysis, he was under no obligation to cite Judge Carey's opinion.[5] Henke's support for his "plagiarism" argument is basically what he calls "idea plagiarism." He disavows any argument that Judge Shannon literally copied Judge Carey's opinion,[6] and a comparison of the two opinions shows that he did not.[7] Judge Carey's opinion relied essentially on the Amended Complaint and the *Sun* article. Judge Shannon relied on the evidence in the record and the *Sun* article. Judge Shannon sometimes cited different law.

---

think that complaints about Judge Carey are immaterial even if I were to assume they could properly be raised in this appeal.

[5] Henke cites a well-known passage that disparaged judges from having the winning party prepare the court's opinion. (D.I. 35 at 15). *See Bright v. Westmoreland Cty.*, 380 F.3d 729, 732 (3d Cir. 2004). The case has no relevance to the issue Henke raises.

[6] It took me a while to figure out what Henke was saying in his opening brief about this. (*See* D.I. 24 at 8). But as far as I can tell, Henke says that Judge Shannon should have attributed a block quote in his opinion to Judge Carey because it has the same misquote—"his" instead of "our"—in a statement attributed to Jack Templeton. (*Compare* 552 B.R. at 303 *with* 616 B.R. at 489-90). I notice in the same block quote that in a different sentence Judge Shannon includes an "a" that does not appear in Judge Carey's opinion or the original source. ("Obsession comes at [a] high cost."). Maybe there are other shared or dissimilar characteristics, but in any event, even assuming that the four sentences were cut-and-pasted from Judge Carey's opinion, I do not think that is "plagiarism." The source materials are cited, and other than conversion from "our" to "his" and the addition of the "a," the source materials support the quoted material.

[7] The other place Henke comes close to arguing copying is in a comparison of two footnotes, one in Judge Shannon's opinion and one in Judge Carey's opinion. (D.I. 24 at 9-10) (discussing footnote 124 in Judge Shannon's opinion and footnote 116 in Judge Carey's opinion). Review of the two footnotes shows that they deal with the same concept in a similar way, but the latter is clearly not plagiarized from the former.

To the extent there is such a thing as "idea plagiarism," I do not think it has much relevance to the law. The law is based upon precedent. At base, precedent is simply principles that have been accepted in the past. There are very few issues that cannot be resolved based on the application of past principles to the present circumstances. And when the present circumstances are not much different than the past circumstances, application of the law to the facts is going to sound similar.

The other arguments about bias can be dealt with summarily. There is no evidence of "bias" in Judge Shannon's opinion. Henke filed no motion to recuse Judge Shannon. The transcripts in the record show scrupulous fairness on the part of Judge Shannon. To the extent Henke's position is that a second judge who works in the same courthouse as a first judge is biased to reach the same conclusion as the first judge if a case is vacated or reversed and reassigned, there is no support for that. I note that the usual pattern upon a remand from an appellate court is that the first judge continues to handle the case, including, if necessary, revisiting the same issues over again. And, suggestions of bias based on the decision going against a litigant (here, Judge Shannon crediting the testimony of the journalist) are, without more, untenable.[8]

The assertion that Henke was denied due process because he had little or no money does not make out a due process violation. For one thing, there is no evidence that he made any objection based on indigency to the bankruptcy court. Thus, I think this assertion is waived. For a second thing, he ably represented himself. He was at the hearing. He participated in all the pretrial conferences. While not a lawyer, he can express himself and did so during a prepared opening statement (D.I. 23 at JA01054-JA01057), a presentation in excess of an hour at the

---

[8] Henke says he is not claiming that "an adverse ruling constitute[s] a due process violation." (D.I. 35 at 41).

hearing (D.I. 23 at JA01164-JA01216, JA01216-JA01228), and a separate closing argument. (D.I. 23 at JA01260-1268). He sufficiently briefed the prior appeal so that I ruled in his favor.

The assertion that Henke had so little time relative to the scope of the case as to constitute a due process violation is belied by the record. Courts have substantial discretion in terms of managing cases and setting schedules. There was no abuse of discretion here, let alone a violation of due process. First, the hearing occurred more than four months after I directed that there be an evidentiary hearing. Second, the hearing occurred more than two months after the bankruptcy court and the parties started focusing on having the hearing. Third, there was only one witness at the hearing. The logic of Henke's contemporaneous explanation for not cross-examining the witness had nothing to do with not being prepared (and he made no request to postpone cross-examination to prepare further); rather, he explained his decision on the basis of lack of expertise to cross-examine. "I'm going to decline the opportunity to cross-examine. I'm not a skilled interrogator and I think it would be best not to engage in that." (D.I. 23 at JA01122). That rationale would be just as applicable to a hearing whenever it was scheduled. Fourth, although Henke complained about the "severe constraints of time" and not being "able to present some very important evidence" about "truly major issues" (D.I. 23 at JA01048, JA01051), his main concern seemed to be errors in his pre-hearing submission. Judge Shannon stated he could submit a revised version. (D.I. 23 at JA01052). Henke did not request to continue the hearing. He did not identify what sort of "important evidence" he was unable to present or "major issues" he was unable to address.[9]

---

[9] Henke's assertion that he was unable to submit important evidence on major issues is undercut by the minutiae that he did submit. He describes as "main evidence" "originals of exams given to his statics classes during his tenure at [Johns Hopkins]." (D.I. 24 at 36). These exams are supposed to show that "he carried out his teaching duties [in 1989] in a normal manner." (D.I. 22 at JA00060).

The assertion that Judge Shannon did not review Henke's evidence is belied by Judge Shannon's statement to the contrary. (*E.g.*, D.I. 23 at JA01049-JA01050, JA01198). Further, as the Sun notes (D.I. 31 at 9), Judge Shannon during the evidentiary hearing showed familiarity with the entire record, including Henke's submissions. Henke seems to imply that Judge Shannon excluded some of Henke's evidence. (D.I. 24 at 37). In support of that argument, he cites footnote 24 of Judge Shannon's opinion. (D.I. 24 at 36). I think the footnote says no such thing.

Henke says the evidentiary hearing was defective. Essentially this argument is that Judge Shannon should have required a brief from the Sun before the evidentiary hearing. But Henke did not ask for this. He candidly admits that the thought only occurred to him well after the hearing had taken place. (D.I. 35 at 42; *see* D.I. 24 at 57-59).[10] There is no basis for a due process argument here.

The last due process argument ("perjury and falsity" in D.I. 24, "deceit" in D.I. 35) appears to be essentially that Judge Shannon accepted the journalist's testimony, which he should not have done because it was deceitful.[11] It was Judge Shannon's role as the finder of fact to credit such testimony as he found credible. He was the evaluator of the evidence. Appellate courts give significant deference to the factual determinations of a judge. "[W]hen a trial judge's finding is based on his decision to credit the testimony of one of two or more witnesses, each of whom has told a coherent and facially plausible story that is not contradicted

---

[10] Henke also complains that the proceedings were defective because he did not have enough time to review the 245 pages of the journalist's notes. (D.I. 24 at 40). He does not cite, and I did not see, any contemporaneous objection based on this assertion.

[11] The Sun refers to an email Henke sent the journalist on October 12, 2007, shortly after publication of the article. The email does not help Henke. It starts by saying, "Overall, I felt the article was courageous." It ends by repeating that "overall, despite omissions, I feel it was a courageous story. You didn't tell the whole story . . . . I hope newspapers are forever." (D.I. 22 at JA00473-JA00475).

by extrinsic evidence, that finding, if not internally inconsistent, can virtually never by clear error." *Anderson v. City of Bessemer City*, 470 U.S 564, 575 (1985).

Much of Henke's briefing is an argument that Judge Shannon should not have accepted the journalist's testimony.  I note two things.  One, accepting the un-cross-examined testimony of the journalist was not clearly erroneous.  Two, Judge Shannon found that Henke had a failure of proof on multiple issues.  Among other things, unrelated to the testimony of the journalist, Henke did not prove that he was harmed by any of the statements alleged to be defamatory or from any of the statements alleged to be a misrepresentation. *Tribune*, 616 B.R. at 495-98.  Those findings too are not clearly erroneous.

For the above-stated reasons, the decision of the bankruptcy court will be affirmed.  I will enter a separate order doing so.

/s/ Richard G. Andrews  
United States District Judge